Filed 1/30/14  P. v. Keeton CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JERMALE KEETON,<br><br>    Defendant and Appellant. | F064723<br><br>(Kern Super. Ct. No. BF136484A)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  Colette M. Humphrey, Judge.

Catherine White, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Catherine Chatman and Larenda R. Delaini, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

# FACTS

## CHARGES

Defendant Jermale Keeton (defendant) was charged with solicitation to commit murder (count I - § 653f, subd. (b)[1]) and active participation in a criminal street gang (count II - § 186.22, subd. (a)).  The amended information alleged defendant committed the murder solicitation for the benefit of a criminal street gang.  (§ 186.22, subd. (b)(1).)  The amended information further alleged defendant has previously been convicted of a felony as defined in sections 667, subdivisions (c)-(j) and 1170.12, subdivisions (a)-(e), and previously served two prior prison terms (§ 667.5, subd. (b).)

## TRIAL EVIDENCE

Witness David Strickland testified that he had been a member of the Country Boy Crips gang from ages 14 to 20.  Strickland had suffered juvenile adjudications for petty theft, grand theft auto, participation in a criminal street gang and receiving stolen property.

In October 2010, Officer Ryan Kroeker searched Strickland's car and discovered marijuana.  Officer Kroeker asked Strickland if he would be willing to provide "information" in exchange for leniency.  The two entered into a written agreement.  Initially, Strickland was to help Officer Kroeker with four cases.  Strickland satisfied this initial obligation, but continued to work with Officer Kroeker.  According to Officer Kroeker, Strickland would provide information leading to arrests or seizures and would be paid "as much as $150" or "as little as $50."

On the afternoon of April 8, 2011, defendant called Strickland.  Defendant asked whether Strickland had been "hanging around my homeboy Nathaniel [Johnson]."  Strickland responded affirmatively, and said he spent time with him every day.  Defendant said he was trying to find Johnson, but did not say why.

---

[1] All further statutory references are to the Penal Code unless otherwise stated.

Approximately one hour after the first call, defendant again called Strickland. He asked Strickland whether he "got in touch with" Johnson. Strickland replied, " 'Yeah. I'm right here with him right now.' " Defendant said he wanted to talk with Johnson. While the phone was in speakerphone mode, Strickland gave the phone to Johnson. Johnson took the phone off of speakerphone mode and walked away from Strickland. Approximately four minutes later, Johnson gave the phone back to Strickland.

Strickland then called defendant to learn what Johnson and defendant had discussed. Defendant told Strickland that Johnson "was no good, that he was a snitch." Defendant said Johnson had "basically admitted" being a snitch on the phone.

Defendant told Strickland to meet him around the corner from Johnson's house in 20 minutes. When Strickland arrived at the location, defendant was already there in his car. The car was a sanded-down Cutlass with no license plates. Defendant told Strickland that he had spoken to "a couple older homies from my hood, from the Country, and that they said it was a go basically on [Johnson]." Strickland understood that defendant was going to kill Johnson.

Defendant asked Strickland to help. Defendant told Strickland to bring Johnson to "the Country," meaning the area where the Country Boy Crips live. After the conversation ended, Strickland walked away and called Officer Kroeker. Strickland then met with Officer Kroeker in his car. At Officer Kroeker's direction, Strickland placed another call to defendant. Strickland "believe[s]" he asked defendant whether "he was sure he got the big homie's okay …." Defendant said, "[Y]eah," and that he would call him back.

Strickland went back to Johnson's house. Strickland told Johnson that "the word out there in the Country is that they want to kill you because you're a snitch."

That night, Officer Kroeker brought Strickland to the police department. Officer Kroeker gave Strickland a phone with which to call defendant. Officer Kroeker said he would record the calls.

3.

Defendant said he "got the okay from the older homies…." Defendant told Strickland to bring Johnson "to that spot on Melwood." Defendant said he would walk up to their car, say something to Johnson and shoot him. Defendant said he would then give Strickland the gun and have someone pick it up later.

Defendant told Strickland he was going to Shellmacher Street to get a gun. Officer Charles Sherman was assigned to respond to Shellmacher Street in an undercover vehicle, follow defendant and have him stopped by a marked patrol unit. It was dark when Officer Sherman arrived at the 3500 block of Shellmacher Street. As he was driving south on Shellmacher, Officer Sherman noticed a parked vehicle. He saw a person he believed to be defendant in the driver's seat. After three or four minutes, defendant began to drive his vehicle south, make a U-turn, then drive north. Officer Sherman followed defendant for a mile and a half where other officers initiated a traffic stop. After the stop, Officer Sherman confirmed the driver was defendant. Officer Louis Wood searched the vehicle and did not locate any firearms. Defendant was arrested.

## JURY INSTRUCTIONS

The court instructed the jury on count II (§ 186.22, subd. (a)) as follows:

> "The defendant is charged in Count 2 with participating in a criminal street gang in violation of Penal Code section 186.22(A).

> "To prove that the defendant is guilty of this crime, the People must prove that: One, the defendant actively participated in a criminal street gang; two, when the defendant participated in the gang, he knew that members of the gang engaged in or have engaged in a pattern of criminal gang activity; and, *three, the defendant willfully assisted, furthered or promoted felonious criminal conduct by members of the gang by directly and actively committing a felony offense*.

> "Elements 1 and 2 have been proven by stipulation. In order to find the defendant guilty of this offense, you must find Element 3 to be true beyond a reasonable doubt.

> "Active participation means involvement with a criminal street gang in a way that is more than passive or in name only.

4.

"As the term is used here, a willful act is one done willingly or on purpose.

"Felonious criminal conduct means committing *or attempting to commit* the following crime:  Solicitation of murder in violation of Penal Code Section 653F(B).

"To decide whether a member of the gang or the defendant committed solicitation of murder in violation of Penal Code Section 653F(B), please refer to the separate instructions that I have given you on that crime."  (Italics added.)

The instructions then proceeded to describe a separate enhancement.

The jury was also instructed on the elements of solicitation and murder. As further discussed below, the jury received no instruction on the elements of attempt or attempted solicitation.

## JURY DELIBERATION PHASE

On December 15, 2011, the jury sent a note stating they had agreed on a verdict for count II (active gang participation), but could not come to an agreement on count I (solicitation).  The court called the jury into the court room.  The foreman explained that the most recent vote was 11 to 1.  The court asked the foreperson whether there were any specific concerns which, if resolved, might assist the jury.  The foreperson indicated that a "definition of terms" might help.  The court had the jurors resume deliberations and instructed them to "write any and all concerns that you might have that will assist each of you in deliberations on a note…."

The jury then sent a note asking several questions, including the following:  " 'Can the verdict of Count 2 be different than Count 1[?]' " [2]  Outside the presence of the jury, the court and counsel discussed the proper response to the question.  The court indicated it would respond to the jury's question by saying:  "The verdict or decision for Count 1 and the verdict or decision for Count 2 are decisions for you to make.  Period…."

---

[2] The jury also asked for a "legal definition of solicit."

5.

Defense counsel requested a different answer to the question, saying: "Not guilty on [count] one, they have to be not guilty on [count] 2 based on the way it was argued. I submitted that. It's our request as to [the court's response to] Question 2."

When the jury was called into the courtroom, the court answered the question as follows: "Regarding Question 2, 'Can the verdict of Count 2 be different than Count 1?' The verdict or decision for Count 1 and the verdict or decision for Count 2 are decisions for you to make. That's it."

## VERDICT AND FINDINGS

The jury convicted defendant of active participation in a criminal street gang, but was unable to reach a verdict on solicitation. The court declared a mistrial as to the solicitation count. The trial court found the prior conviction and prior prison term allegations as to count II to be true.

## POSTVERDICT

The court declared a mistrial as to count I because the jury was unable to reach a verdict.

Defendant moved for a new trial on the grounds that the guilty verdict on count II was not supported by substantial evidence. The trial court denied the motion. The court said that if one or more of the jurors believed that defendant had not committed solicitation but *had* committed attempted solicitation, then "one can be found guilty of Count 2 and not guilty of Count1. For those reasons, the Court has come to an understanding as to what the jury believed when they reached a decision in one count and were unable to reach the decision in another count."

The court sentenced defendant to a prison term of 11 years.[3]

---

[3] At sentencing, the court stated defendant was sentenced to "the upper term of 6 year(s)" on count II. The upper term for a violation of section 186.22, subdivision (a) is three years. (§ 186.22, subd. (a).) That term was apparently *doubled* to six years

Defendant subsequently pled no contest to count I (§ 653f, subd. (b)), and admitted the gang enhancement.[4]  (§ 186.22, subd. (b)(1))  Defendant also admitted a prior conviction as defined in section 667, subdivisions (a) and (e).  The prior prison term allegations were dismissed.

The court resentenced defendant to an aggregate term of 13 years.  The sentence included the lower term of three years on the murder solicitation count, doubled pursuant to section 667, subdivision (e), plus two years for the gang enhancement, plus five years pursuant to section 667, subdivision (a).  On count II, the court sentenced defendant to six years and stayed imposition of the sentence pursuant to section 654.

## DISCUSSION

### I.

### THE TRIAL COURT ERRED IN FAILING TO ADEQUATELY RESPOND TO THE JURY'S QUESTION REGARDING VERDICT CONSISTENCY

A.    SECTION 1138

Section 1138 provides that if the jury "desire[s] to be informed on any point of law arising in the case,… the information required must be given .…"  (§ 1138; see also *People v. Beardslee* (1991) 53 Cal.3d 68, 97.)  Thus, "a trial court is *required* to instruct a deliberating jury on its request 'on any point of law arising in the case.'  [Citation.]" (*People v. Waidla* (2000) 22 Cal.4th 690, 746, italics added.)

"The court has a primary duty to help the jury understand the legal principles it is asked to apply.  [Citation.]  This does not mean the court must always elaborate on the standard instructions.  Where the original instructions are themselves full and complete,

---

pursuant to section 667, subdivision (e).  Five years were added to the term pursuant to section 667, subdivision (a).

[4] Neither party has contended that the subsequent no contest plea to solicitation affects our analysis of the conviction for active gang participation.

the court has discretion under section 1138 to determine what additional explanations are sufficient to satisfy the jury's request for information. [Citation.]" (*Beardslee*, *supra*, 53 Cal.3d at p. 97.)

A trial court's answer to a jury question can be erroneous even if it is free of inaccuracies.[5] In addition to avoiding incorrect statements of law, the court's answer must also "clear up any instructional confusion expressed by the jury. [Citations.]" (*People v. Gonzalez* (1990) 51 Cal.3d 1179, 1212, superseded by statute on another point as stated in *In re Steele* (2004) 32 Cal.4th 682, 691.)

Here, the trial court's answer did not contain any incorrect statements of law. It simply reiterated that the verdicts were decisions for the jury to make – a proposition defendant does not dispute. The issue presented here is whether the trial court's answer satisfied the duty to "clear up [the] instructional confusion expressed by the jury. [Citations.]" (*Gonzalez*, *supra*, 51 Cal.3d at p. 1212.) First, we will explore the nature of the "instructional confusion" present here, then we will consider whether the court's answer "clear[ed] up" that confusion.

B.    INSTRUCTIONAL CONFUSION

1.    *The Third Element of Count II (§ 186.22(a))*

The trial court instructed the jury on the three elements of count II, the active gang participation charge. Its instructions on the third element required the prosecution to prove "defendant willfully assisted, furthered or promoted felonious criminal conduct by members of the gang by directly and actively committing a felony offense."[6] The court

---

[5] The Attorney General quotes *Beardslee*, *supra*, 53 Cal.3d at p. 97: "Where the original instructions are themselves full and complete, the court has discretion under section 1138 to determine what additional explanations are sufficient to satisfy the jury's request for information. [Citation.]" As we explain, the original instructions were not full and complete.

[6] The phrase, "by directly and actively committing a felony offense," identifies one of at least two ways this element can generally be satisfied. A defendant could

8.

subsequently instructed the jury that "[f]elonious criminal conduct means committing *or* attempting to commit the following crime:  Solicitation of murder in violation of Penal Code Section 653F(B)."  (Italics added.)  The court concluded its instructions on count II by saying:  "To decide whether a member of the gang or the defendant committed solicitation of murder in violation of Penal Code Section 653F(B), please refer to the separate instructions that I have given you on that crime."

2.       *Incorporation of the Elements of the Underlying Felony*

"Some crimes … incorporate, as one element, all of the elements of *another* crime. [Citation.]"  (*People v. Mil* (2012) 53 Cal.4th 400, 413, original italics; e.g., *People v. Magee* (2003) 107 Cal.App.4th 188, 192 (*Magee*) [accessory after the fact].)  The plain language of section 186.22, subdivision (a) shows that it is one such crime.  Section 186.22, subdivision (a) clearly requires that members of the gang commit a felony.[7] (§ 186.22, subd. (a).  See also, *People v. Green* (1991) 227 Cal.App.3d 692, 704 abrogated on another point by *People v. Castenada* (2000) 23 Cal.4th 743.)  Thus, the elements of that underlying felony are incorporated into the active gang participation offense.[8]  (Cf. *Magee*, *supra* 107 Cal.App.4th at pp. 192-193.)

---

satisfy this element by aiding and abetting other gang members in committing a felony; or, as alleged here, *directly* committing a felony with other gang members.  (See *People v. Rodriguez* (2012) 55 Cal.4th 1125, 1135-1136.)  Accordingly, the pattern jury instruction divides the second portion of element three into two subparts.  (See CALCRIM 1400.)  Subpart (a) sets forth the direct commission of a felony, while subpart (b) sets forth aiding and abetting a felony.  Here, there was no evidence that defendant had merely aided and abetted another gang member in committing the crime of solicitation, so the court omitted subpart (b) and only instructed on direct commission of a felony.

[7] We will refer to the crime constituting "felonious criminal conduct" as the "underlying felony."

[8] The pattern jury instructions currently provide for instruction on the elements of the underlying felony by reference.  (See CALCRIM 1400 ["[To decide whether a member of the gang [or the defendant] committed <insert felony or felonies listed

9.

The effect of this incorporation is to trigger a constitutional requirement to instruct the jury on the elements of the underlying felony. (Cf. *Magee*, *supra*, 107 Cal.App.4th at pp. 192-193.) Failure to do so runs afoul of the requirement that the court instruct "on the principles of law that are relevant to and govern the case, including instruction on all of the elements of the offense. [Citation.]" (*Id*. at p. 193.)

3.      *The Instructions Identified Two Potential Underlying Felonies, but Only Identified the Elements of One*

As to the underlying felony of solicitation, this requirement was met. The court instructed the jury: "To decide whether a member of the gang or the defendant committed solicitation of murder in violation of Penal Code Section 653F(B), please refer to the separate instructions that I have given you on that crime." The separate instructions on solicitation correctly identified the elements of that crime.

However, solicitation was not the only underlying felony tendered to the jury. The instructions on count II defined "felonious criminal conduct" as "committing *or attempting to commit* the following crime:  Solicitation of murder in violation of Penal Code Section 653F(B)." (Italics added.) The court did not instruct the jury on the elements of attempt. (See § 21a; CALCRIM 460.)

Identifying attempted solicitation as a potential underlying felony poses two problems.

First, it was error in and of itself. "It is error to give an instruction which, while correctly stating a principle of law, has no application to the facts of the case. [Citation.]" (*People v. Guiton* (1993) 4 Cal.4th 1116, 1129.) The parties agree on appeal that there was no substantial evidence defendant merely *attempted* to solicit Strickland to commit murder. As the trial court noted during jury deliberations:  "Given the evidence

immediately above>, please refer to the separate instructions that I (will give/have given) you on (that/those) crime[s].]"])

10.

in this case, it does not appear … the evidence would have supported giving [instruction on attempted solicitation]." [9]

Second, without an accompanying explanation of the elements of attempt, the instructions effectively told the jury to determine whether defendant committed an *undefined* crime. As we explained in an analogous context: "Without [instruction on the elements of the underlying offense] a jury will not be equipped with the necessary information to find that [the] felony occurred. It will not know the facts the prosecution must prove to establish the underlying felony, i.e., the jury will be left to guess or speculate whether a felony occurred." (*Magee*, *supra*, 107 Cal.App.4th at p. 193.)

4. *The Court's Answer to the Jury's Question Did not Clear Up the Instructional Confusion*

With this understanding of the instructional confusion faced by the jury, we turn to whether the court's answer to the jury question cleared up that confusion. The jury asked whether the verdicts on counts I and II needed to be the same. This seems to suggest the jury was understandably confused as to whether "felonious criminal conduct" in count II was functionally synonymous with the crime of solicitation to commit murder defined in count I. If the original instructions had properly omitted any reference to attempted solicitation, then this confusion would presumably not have arisen. Or confusion might have been avoided if the erroneous reference to attempted solicitation had been coupled with instruction on the elements of attempt. Regardless, the court's response that each verdict was a decision for the jury, while true, did not " 'clear up any instructional confusion .…' " (*People v. Loza* (2012) 207 Cal.App.4th 332, 355.) This was error.

---

[9] This statement by the trial court suggests the reference to attempted solicitation in the jury instructions was inadvertent. To avoid this type of confusion in the future, we recommend brackets be placed around "or attempting to commit" in CALCRIM No. 1400's definition of "felonious criminal conduct." This will signal there is a decision point for the parties and the trial court to consider when settling on jury instructions.

11.

C.   PREJUDICE

"Any error under section 1138 … is subject to the prejudice standard of *People v. Watson* [(1956)] 46 Cal.2d 818, 836 [(*Watson*)] …." (*People v. Roberts* (1992) 2 Cal.4th 271, 326.)  We ask whether " 'it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error.' [Citation.]" (*People v. Soojian* (2010) 190 Cal.App.4th 491, 519.)

        1.  *The Jury Likely Used Attempted Solicitation as the Basis for Finding Felonious Criminal Conduct Had Occurred Under Count II*

Under *Watson*, the error might have been harmless if the jury used actual solicitation, rather than attempted solicitation, as the basis for finding element three of section 186.22, subdivision (a) had been satisfied.  However, it appears the opposite occurred here.  When considered together, the two verdicts suggest the jury used *attempted* solicitation as the felony underlying element three of section 186.22, subdivision (a).  The jury did not convict defendant on the standalone solicitation charge (count I).  Under the court's instructions, that leaves only attempted solicitation as the basis for finding "felonious criminal conduct" in support of the third element of count II.  Thus, assuming the jury followed the instructions as given, it is likely the jury found defendant had committed attempted solicitation in satisfaction of the third element of 186.22, subdivision (a).[10]  If so, they made that finding without any instruction on the elements of attempt.

---

    **[10]** Another possibility is that the jury believed defendant was a gang member and therefore convicted him on count II without finding he promoted, furthered or assisted felonious criminal conduct.  This conclusion would also require reversal because "section 186.22(a) limits liability to those who promote, further or assist a specific felony committed by gang members …." (*People v. Castenada*, *supra*, 23 Cal.4th at p. 749.)

The Attorney General cites *United States v. Powell* (1984) 469 U.S. 57 (*Powell*) in arguing we should not "presume" the jury used attempted solicitation as the felonious criminal conduct underlying the active gang participation conviction.[11]

*Powell* is not applicable here. In that case, the Supreme Court reaffirmed that consistency between criminal verdicts "is not necessary." (*Powell*, *supra*, 469 U.S. at p. 62, quoting *Dunn v. United States* (1932) 284 U.S. 390, 393.) We agree that, under *Powell* and its progeny, it would erroneous to reverse a conviction merely because it is inconsistent with another verdict. But this is not a case of inconsistent verdicts. Indeed, there was only one verdict here. Rather, it is a case of purported instructional error. While inconsistent verdicts do not warrant reversal, prejudicially erroneous or incomplete jury instructions do. Here, we look to the jury's failure to reach a verdict on count I in analyzing whether a separate instructional error was prejudicial. The *Powell* line of cases does not require that reviewing courts ignore a jury's verdict (or failure to reach a verdict) in determining whether an instructional error was harmless.

### 2. *People v. Cain is Distinguishable*

Though the Attorney General does not argue that *People v. Cain* (1995) 10 Cal.4th 1 (*Cain*) is on point, we feel it appropriate to distinguish that case. In *Cain*, the defendant was charged with murder with an attempted rape special circumstance, among other crimes. (*Id.* at p. 18.) The court instructed the jury on the elements of rape (CALJIC 10.00) and the attempted rape special circumstance (CALJIC 8.81.17). (*Cain*, *supra*, at p. 44.) One of the elements identified in the special circumstance instruction was: " '… That the murder was committed while the defendant was engaged in or was an accomplice in the commission *or attempted commission* of a burglary, a robbery, or a

---

[11] We note that we are not "presuming" the jury used attempted solicitation as the underlying felony for count II. Rather, we are acknowledging that there is a reasonable possibility the jury used attempted solicitation as the underlying felony. Indeed, that is the conclusion the trial court came to as well.

rape….' " (*Id.* at p. 43, some italics omitted.) Neither the special circumstance instruction nor any other instruction identified the elements of attempt. (*Id.* at p. 44.)

In *Cain*, the Attorney General conceded that the failure to instruct on attempt was error. (*Cain*, *supra*, 10 Cal.4th at p. 44.) The California Supreme Court analyzed prejudice as follows:

> "As the Attorney General persuasively argues, *insofar as relevant here* [CALJIC 6.00] merely restates the common meaning of 'attempt.' To attempt an act is to 'try' or 'endeavor to do or perform' the act. (Webster's New Internat. Dict. (2d ed. 1958) p. 177.) … As the prosecutor argued to the jury in his closing statement, *no explanation other than rape or attempted rape was sufficient to explain* the position of [the victim's] body and the presence of pubic and body hairs in her clothes. *Under these circumstances*, we conclude omission of the attempt instruction did not contribute to the verdict obtained; the jury necessarily made the requisite findings necessary to hold defendant liable …." (*Ibid.,* italics added.)

As this passage makes clear, *Cain*'s holding on this issue was narrowly-tailored to the facts of that case.[12] Both actual and attempted rape were consistent with the evidence. (*Cain*, *supra*, 10 Cal.4th at p. 44 ["no explanation other than rape or attempted rape was sufficient to explain" certain evidence].) The same cannot be said of the present case. There was no evidence here that defendant merely *attempted* to solicit murder. That is, there was no substantial evidence that defendant had taken a direct, *ineffectual* act towards the commission of solicitation. (See § 21a.) Indeed the Attorney General acknowledges that there was no substantial evidence of attempted solicitation. Thus, the likelihood that the jury misunderstood or misapplied the confusing instructions on count II is far greater here than in *Cain*.

---

[12] This narrow holding is consistent with the high court's recent observation that " '[t]he law of "attempt" is complex and fraught with intricacies and doctrinal divergences.' [Citation.]" (*People v. Bailey* (2012) 54 Cal.4th 740, 753.) We think this complexity is only amplified when the crime attempted is another inchoate offense like solicitation.

14.

3. *The Trial Court's Original Instructions Were Incomplete*

The Attorney General also argues any error was harmless because the original instructions were correct and the court's response to the jury's question did not remove an element of the offenses from consideration. But as we have explained, the original instructions were not correct. Thus while the court's *response* did not remove an element from the jury's consideration, the court's *original* instructions did undermine the jury's consideration of an element of the offense. (See Discussion § I.B.2., *ante*.) The court's response did not rectify this problem caused by the original instructions.

4. *Harmless Error Analysis Focuses on What Would Have Occurred in the Absence of Error*

The Attorney General also argues that if the court "advised the jury that the verdicts needed to be the same, the jury likely would have returned a guilty verdict on count 1, solicitation for murder. Directing the jury's verdict in such a manner would have been prejudicial to appellant…." This analysis inverts the *Watson* harmless error test. In determining whether an error is harmless under *Watson*, *supra*, 46 Cal.2d 818, we envision a hypothetical where no error occurred. (*Id.* at pp. 836-837 ["in the absence of the error"].) Thus, *Watson* would have us envision a *correct* response to the jury's question and determine whether *it* would have resulted in a more favorable outcome for defendant. The hypothetical response to the jury's question posed by the Attorney General (i.e., that "the verdicts needed to be the same") would have been erroneous.[13] Thus, it is not the type of hypothetical we are called to analyze under *Watson*.

---

[13] The verdicts on the two counts did not have to be the same if, for example, the jury found defendant had committed solicitation, but did so alone (i.e., not with other gang members). (See generally *People v. Rodriguez*, *supra*, 55 Cal.4th 1125.) In that case, it would be consistent for the jury to convict on count I and acquit on count II.

5. *The Error Was Not Harmless*

A correct response by the trial court would have clarified the " 'instructional confusion expressed by the jury.' [Citation.]" (*People v. Loza*, *supra*, 207 Cal.App.4th at p. 355.) Here, the source of that confusion was likely the original instruction's erroneous reference to attempted solicitation without any description of the elements of that offense. Consequently, an appropriate answer under section 1138 would have removed attempted solicitation from the definition of "felonious criminal conduct." This would have left actual solicitation as the only underlying felony for the jury to consider. As corrected, the instructions would have made clear that if the jury did not find defendant committed solicitation in count I, then "felonious criminal conduct" would not have been established for count II.**14**

Here, the jury could not reach a verdict on the solicitation count. Therefore, if it had been made clear to the jury that solicitation under count I was synonymous with "felonious criminal conduct" under count II, it is reasonably likely the jury would have failed to reach a verdict on count II as well. And, as we explained in *People v. Soojian*, a hung jury is a "more favorable" result under the *Watson* harmless error analysis. (*People v. Soojian*, *supra*, 190 Cal.App.4th at pp. 520-521.) Therefore, we conclude the error was not harmless under *Watson*, *supra*, 46 Cal.2d 818 and reverse defendant's conviction for violating 186.22, subdivision (a).

We therefore need not reach the remainder of defendant's contentions.

## CONCLUSION

We take reversal of a criminal conviction seriously. But, as we have explained, there are a number of possible explanations for the jury's verdicts. The jury could have

---

**14** Defense counsel requested that the trial court make respond to the jury's question by explaining if the jury found defendant not guilty of solicitation, they must find defendant not guilty of active gang participation.

convicted defendant on count II by either (1) ignoring the instruction requiring that defendant committed an underlying felony, or (2) concluding he committed attempted solicitation without instruction and without substantial evidence. The Attorney General would have us consider a third possibility: that the jury concluded defendant committed the underlying felony of solicitation. But the viability of that scenario is greatly undermined by the jury's failure to reach a verdict on solicitation. Having concluded the instructional error was prejudicial, we must reverse.

## DISPOSITION

Defendant's conviction for violating section 186.22, subdivision (a) is reversed. The matter is remanded for possible retrial.

_____

Poochigian, J.

WE CONCUR:

_____

Cornell, Acting P.J.

_____

Franson, J.

17.